**SO ORDERED.**

**SIGNED this 21st day of March, 2014.**



_____
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **Ralph Joseph Greco and** | ) Case No. 12-51497 |
| **Elise Johnson Greco** | ) |
| | ) |
| **Debtors.** | ) |
| | ) |

### MEMORANDUM OPINION AND ORDER OVERRULING OBJECTION TO CLAIM

THIS MATTER came before the Court on February 11, 2014, upon the Debtors' Objection to Amended Claim Number 9-2 of Capital Bank, N.A. Appearing before the Court were Jeffrey Faran, attorney for the Debtors; Rayford K. Adams, III, on behalf of Capital Bank; and Vernon Cahoon, for the Office of the Chapter 13 Trustee. Based upon the response to the objection to claim, the evidence presented at trial, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

1

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334 and Local Rule 83.11 entered by the United States District Court for the Middle District of North Carolina. This is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2), which this Court has jurisdiction to hear and determine.

## FINDINGS OF FACT

*A. Mortgage, Default, and Bankruptcy*

Debtors Ralph and Elise Greco filed the Chapter 13 bankruptcy petition in this case on October 19, 2012. At that time, Capital Bank (the "Bank") held a duly-perfected mortgage and Deed of Trust that encumbered both the Debtors' commercial property—the property that is the subject of this proceeding—and the Debtors' residence. The commercial property is located at 11 Bailey Street, Mocksville, N.C. The residence is located at 328 Riverbend Drive, Advance, N.C. A Note and Deed of Trust, together dated July 30, 2008, provide that the properties secure a debt in the original principal amount of $600,000.00. The Deed of Trust was duly recorded in the Office of the Register of Deeds of Davie County in Book 766 at Page 697. The Bank was given a first Deed of Trust on the Bailey Street property and a second Deed of Trust on the Riverbend Drive property.

The Bailey Street property (the "Property") consists of 5.29 acres. The Debtors purchased the Property in 1985 and built a 27,500-square foot warehouse building on it in 1995. Some small outbuildings also sit on the Property. Up until 2006, the Debtors used the Property to manufacture plywood. After that operation ceased, a tenant leased the warehouse for about eighteen months. In 2007, the Debtors first put the Property on the market. Since then, it intermittently has been taken off and put back on the market.

The original listed sale price of the Property was $850,000.00. According to the Debtors, sometime in 2009 or 2010 they received the only offer they ever would receive—for $675,000.00. The Debtors turned down the offer, believing the Property to be worth more. In or about 2011, the sale price was reduced to $750,000.00. For the entire period during which the Property was listed for sale, the Debtors continued to make payments on it in the amount of $7,000.00 per month. The Debtors also continued to pay property taxes, maintain insurance, and perform upkeep. In early 2012, the Debtors ceased making payments. When they filed for bankruptcy that October, foreclosure proceedings were already underway.

## *B. Foreclosure*

At the time the bankruptcy petition was filed, the Property secured a debt of $596,236.24, owed to the Bank's predecessor in interest, Southern Community Bank, exclusive of attorney fees. In the petition, the Property is scheduled with a fair market value of $739,970.00, which corresponds with the Davie County Tax Department's valuation of the Property for tax year 2012. In the Proposed Plan that the Debtors filed with their petition, the Debtors stated that they intended to surrender the Bailey Street property and to retain the Riverbend Drive property.

On October 26, 2012, Southern Community Bank filed a motion for relief from stay, seeking authority to exercise its state law rights with respect to the Property. At the hearing on the motion on November 21, 2012, counsel for the movant represented that an appraisal of the Property had obtained a value not exceeding $414,000.00. The Debtors did not appear at that hearing, nor did they file an objection to the motion. The Court granted the motion on December 4, 2012 and provided in the ensuing Order that Capital Bank, who by then had assumed Southern Community Bank's interest in the Property, would have 180 days from entry of the Order to file a deficiency claim.

The Bank filed its original proof of claim on December 12, 2012. The foreclosure sale took place on January 31, 2013. As the sole bidder, the Bank purchased the Property for $350,000.00. Thereafter, on February 20, 2013, the Bank filed a timely amendment to its proof of claim. The Amended Proof of Claim reflects that after sale of the Property, there remains a secured deficiency claim of $267,948.64. The claim is secured by the Riverbend Property.

**C.** *Debtors' Objection to Claim*

Pursuant to N.C. Gen. Stat. § 45-21.36, the Debtors filed an Objection to the Bank's Amended Proof of Claim. Contending that the Bank's bid at the foreclosure sale was "substantially less" than the "true value" of the Property, the Debtors ask the Court to bar or reduce the Bank's claim.

## **DISCUSSION**

In relevant part, N.C. Gen. Stat. § 45-21.36 provides the following:

> When any sale of real estate has been made by a mortgagee…at which the mortgagee…becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee…shall sue for and undertake to recover a deficiency judgment against the mortgagor,…it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and offset…that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and, upon such showing, to defeat or offset any deficiency judgment against him, either in whole or in part…

There is no dispute that this provision is applicable in this proceeding.

"The defense against deficiency judgments afforded by section 45-21.36 is available where the [debtor] proves that the amount bid was substantially less than the fair market value of the real property at the time of the foreclosure sale." *In Re Stutts*, No. 11-11728, slip op. at 10 (M.D.N.C. December 3, 2013). As such, the Debtors in this case are entitled to relief under § 45-21.36 if the Court finds that the Bank's bid of $350,000.00 was substantially less than the Property's fair market value at the time of the foreclosure sale. Notably, "the amount of the creditor's bid does not establish the value of the property for the purposes of applying section 45-21.36." *Id.* at 11.

On the issue of the Property's fair market value at the time of the foreclosure sale, the evidence in this case comes from three sources: the male Debtor, the tax records, and the parties' experts.

### A. Testimony of Ralph Joseph Greco & Evidence from the Tax Records

The male Debtor, Ralph Joseph Greco, is competent to offer testimony based on his personal knowledge. Mr. Greco testified that he personally believed the Property had been worth $750,000.00 at the time of the foreclosure sale. At the time the Debtors' petition was filed, the Davie County Tax Records listed a fair market value for the Property of $739,970.00 for tax year 2012 and $850,000.00 for tax year 2013.

### B. Expert Appraisal Testimony

By stipulation of the parties, three individuals, each of whom has extensive experience and training in commercial real estate, were admitted as experts in that field. None of the experts could account for the high valuation reached by the taxing authority. All of the experts reached a lower valuation, but varied as to how much lower they placed the fair market value.[1]

---

[1] The fact that the Bank ultimately sold the property for $325,000.00 in 2013 did not figure into any of the experts' valuations.

Mr. Terry Ward, the Debtors' appraiser, testified to having made a determination that it would be best to approach the valuation through the use of a method called "sales price comparison." Ward testified that his application of that approach led him to believe that the fair market value of the Property had been $621,000.00 at the time of the foreclosure sale. Mr. Ronald W. Loftis, Jr., the Bank's appraiser, testified that he, too, had made the determination that the best approach to the valuation would be to use the sales price comparison method. Loftis testified that he believed that the fair market value of the Property had been $285,000.00 at the time of the foreclosure sale—$255,000.00 for the warehouse and $30,000.00 for the land.

Loftis' application of the sales price comparison method differed from Ward's in one significant respect: the degree to which Loftis had taken the Property's location into account in determining fair market value. Whereas Loftis had reached the conclusion that the Property's location, in the Mocksville area of Davie County, justified a substantial reduction in value, Ward had not.

The third expert, J. Thomas Taylor, was retained by the Bank to evaluate the Loftis and Ward appraisals. Taylor's task was not only to determine which appraisal was more accurate, but also to formulate his own opinion as to what the fair market value of the Property had been at the time of the foreclosure sale. Taylor testified that he believed that Ward had overvalued the Property by having failed to consider its location. Taylor described the Mocksville area as one that had been hit hard by the recent economic downturn. He also characterized the neighborhood in which the Property sits as very run down. Taylor further testified that certain inconsistencies in the Ward appraisal caused him to question some of the data used therein. Based on these considerations and others, Taylor concluded that the fair market value of the Property had been between $300,000.00 and $310,000.00 at the time of the foreclosure sale.

6

Given that two experts testified, under oath, to a belief that the fair market value of the Property had been no more than $310,000.00 at the time of the foreclosure sale, the Court concludes that the greater weight of the evidence precludes a finding that a bid of $350,000.00 was substantially less than the Property's true value.

This conclusion is consistent with North Carolina law. In a recent case, the North Carolina Court of Appeals adduced a guideline for determining whether a bid may be deemed to have been substantially less than the true value of the subject property. *Blue Ridge Sav. Bank, Inc. v. Mitchell*, 721 S.E.2d 322 (N.C. Ct. App. 2012) aff'd, 366 N.C. 331, 734 S.E.2d 572 (2012). The court in *Mitchell* applied a guideline that "a bid that was twenty percent less than the appraised value of the property was 'substantially less' than the property's true value." *Id*. at 325.[2] The court characterized the governing statute, N.C. Gen. Stat. § 45-21.36, as one that "limits the 'possibility of abuse leading to a windfall' for the creditor." *Id.* at 324 (citation omitted).

Application of *Mitchell* to the facts of this case requires the Court to determine whether, at the time of the foreclosure sale, the fair market value of the Property had been of such an amount that, were it to have been reduced by twenty percent, it would have equaled no more than the Banks's bid of $350,000.00. Put differently, the Court must ask what figure, when reduced by twenty percent, equals $350,000.00? The answer is $437,500.00. Accordingly, in order for the

---

[2] In utilizing the twenty percent guideline, the *Mitchell* court drew on *First Citizens Bank & Trust Co. v. Cannon*, 138 N.C. App. 153, 530 S.E.2d 581 (2000). The dissenting Judge in *Mitchell* pointed out that the *Cannon* court "never specifically characterized the bid amount [there] to be 'substantially less' than the property's true value; this was only done by the trial court." *Mitchell* at 325. "Instead," continued the dissent, the *Cannon* court "addressed the appellant's argument that the trial court relied on incompetent evidence in determining the true value of the property in question….[The *Cannon* court] disagreed with the appellant's argument and affirmed the trial court's decision….The appellant made no argument regarding whether the amount bid was in fact 'substantially less' than the value of the true property [sic], and, as such, this Court did not address the issue." *Id*. While this Court is sympathetic to the *Mitchell* dissent's position that a close reading of *Cannon* does not support a conclusion that an "amount bid and property value difference of twenty percent [was] a percentage [the *Cannon* court] upheld as 'substantially less'" than true value, this Court nevertheless concludes that due respect for the principle of *stare decisis* requires adherence to the interpretation of the *Mitchell* majority. *Id*.

Court to be able to conclude, under *Mitchell*, that the Bank's bid was substantially less than the Property's true value, the Court would have to find that the Property's fair market value had been at least $437,500.00 at the time of the foreclosure sale. The evidence does not support such a finding. Furthermore, the Court is unable to conclude that the Bank received a windfall when it purchased the Property for $350,000.00.

## **CONCLUSION**

The parties have offered much credible and competent expert testimony in support of their respective claims about the true value of the Property at the time of the foreclosure sale. In light of that testimony and the deficiencies in the Ward appraisal, the Court concludes that the price the Bank paid for the Property at the foreclosure sale was not substantially less than its true value.

Therefore, it is ORDERED, ADJUDGED, and DECREED that the Debtors' Objection to Amended Claim Number 9-2 of Capital Bank, N.A. is overruled.

END OF DOCUMENT

# SERVICE LIST

Ralph J. Greco
Elise J. Greco
Debtors

Jeffrey Farran
Attorney for Debtors

Rayford K. Adams, III
Attorney for Creditor

Kathryn L. Bringle
Trustee

William P. Miller
US Bankruptcy Administrator